| | |
|---|---|
| CARMEN BILLMEYER, Adminstratix of the Estate of ALEX BILLMEYER, deceased,<br><br>   Plaintiff,<br><br>v.<br><br>DUBUQUE COUNTY SHERIFF'S OFFICE, SHERIFF JOE KENNEDY (Individually and in his Official Capacity), SGT. DAN RICHMAN (Individually and in his Official Capacity), DEPUTY JON KAUFFMAN (Individually and in his Official Capacity), DEPUTY LEWIS POTHOFF (Individually and in his Official Capacity), DEPUTY ASHLEE HOFFMAN (Individually and in her Official Capacity), DEPUTY JUSTIN McELMEEL (Individually and in his Official Capacity), THE CITY OF DUBUQUE POLICE DEPARTMENT, LT. PABLO RAMIEREZ (Individually and in his Official Capacity), OFFICER B.J. GOERDT (Individually and in his Official Capacity), and OFFICER THOMAS WARNER (Individually and in his Official Capacity),<br><br>   Defendants. | CASE NO: 2:20-CV-1007<br><br><br>**FIRST AMENDED PETITION AT LAW** |

**COMES NOW,** Plaintiff, by and through the undersigned counsel and hereby submits the following:

## I. INTRODUCTION

1. Plaintiff Carmen Billmeyer is the mother and Administratrix of the Estate of Alex Eugene Billmeyer, deceased. As more specifically set forth below, Mr. Billmeyer was subjected to Defendants' neglect of and deliberate indifference to his serious and obvious medical needs and, as a consequence, died. It is the purpose of this action to recover the actual damages Mr. Billmeyers' estate has suffered as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. JURISDICTION AND VENUE

2. Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed her son by the Fourteenth Amendment to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 38 U.S.C. §§1331 and 1343. Plaintiff also seeks to recover damages under the supplemental jurisdiction of this Court on her state claims of negligence, gross negligence, and wrongful death. Dubuque County, Iowa is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. PARTIES

3. Plaintiff resides in Dubuque County, Iowa.

4. Defendant Dubuque County Sheriff, at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom and practice for, and was responsible for the employment, training, supervision and conduct of, the officers, employees and medical professionals at the Dubuque County Sheriff ("DCS") and the Dubuque County Jail ("the Jail").

5. Defendant Joe Kennedy was at all times mentioned herein the elected supervisor of the DCS, and as such established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers and employees of the DCS and the Jail.

6. Defendants Sgt. Dan Richman, Deputy Lucas Pothoff, and Deputy Jon Kaufman (hereafter collectively "the DCS Officers") were at all times mentioned herein officers and employees of the DCS, and knew of or witnessed Mr. Billmeyer's condition and responded with deliberate indifference and/or neglect/gross neglect as described below.

7. Defendant City of Dubuque Police Department, ("DPD") at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom and practice for, and was responsible for the employment, training, supervision and conduct of, the officers, employees

8. Defendants Lt. Pablo Ramierez, Officer B.J. Goerdt, and Officer Thomas Warner (hereafter collectively "the DPD Officers") were at all times mentioned herein

officers and employees of the DPD, and knew of or witnessed Mr. Billmeyer's condition and responded with deliberate indifference and/or neglect/gross neglect as described below.

## IV. NATURE OF DEFNDANTS' CONDUCT

9. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the State of Iowa, the County of Dubuque and the City of Dubuque. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of the Defendants Sheriff of Dubuque County and its elected Sheriff Joe Kennedy, to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom and practice to protect the constitutional rights of inmates like Mr. Billmeyer. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Mr. Billmeyer and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages his estate is entitled to recover.

## V. FACTS

10. Mr. Billmeyer was arrested by the DPD officers on May 26th, 2019 at approximately 3:15 p.m., based upon a suspected call of burglary, criminal mischief, or trespass, and on an outstanding in state warrant for escape. At the time of his arrest, Mr. Billmeyer was exhibiting obvious symptoms of a drug overdose.

11. Some of the obvious signs of a drug overdose exhibited to officers were indications of paranoia, hallucinations, loss of conscious, unable to answer basic questions, disorientation, and a failure to have control over his bodily functions.

12. Information was also passed on to DPD officers that Mr. Billmeyer had overdosed on a mind-altering drug are statements made to police by his mother, Carmen Billmeyer, and admissions by Billmeyer that he had taken methamphetamine.

13. DPD officers told him that he would get whatever help he needed at the Jail.

14. When Mr. Billmeyer arrived at the Jail on or around 3:47 pm on May 26th, his obvious symptoms of overdose had only increased. He was not assessed by any medical professional, or any precautions taken for his safety.

15. DCS deputies indicate that Jail staff had no information regarding the circumstances of Mr. Billmeyer's arrest. DPD officers failed to inform DCS deputies that Mr. Billmeyer had likely overdosed on meth; although the condition and symptoms of Mr. Billmeyer should have been obvious to DCS staff.

16. During the booking process, DCS deputies made the following observations of Mr. Billmeyer:

a. That Mr. Billmeyer "kept looking around advising someone was trying to get him,"

   b. Became very agitated,

   c. Stated "someone behind the door was trying to get him",

   d. Was sweating, agitated, paranoid and noted his eyes to be wide open as he kept looking around for someone he thought was trying to kill him,

   e. He attempted to shut the booking room door and hide from someone he thought was in the hallway trying to kill him,

   f. He kept his head in his hands, he was doubled over, and was visibly shaking and rocking during the entire booking process,

17. In response to these symptoms and observations, DCS deputies merely decided to put Mr. Billmeyer in a holding cell, and did not take any actions to treat Mr. Billmeyer for a drug overdose.

18. DCS deputies' only response and treatment for these observations was to verbally assure Mr. Billmeyer that no one was going to kill him and that he was going to be ok.

19. Allegedly, at 3:53 pm, Deputy Richman checked on Mr. Billmeyer in his cell. Deputy Richman notes that Mr. Billmeyer was clinging to the toilet with his right arm.

20. At 4:00 pm Deputy Pothoff allegedly checked on Mr. Billmeyer in is cell to see if he wanted food. Mr. Billmeyer did not respond to questions and was "talking to himself and crawling around the cell without an answer".

21. At 4:24 pm Deputy Kaufman advised Deputy Richman that Mr. Billmeyer vomited on himself and was smearing it on the walls as he crawled on his hands and knees.

22. At 4:54 pm Deputy Kaufman advised Deputy Richman that Mr. Billmeyer was sitting upright in the corner of the cell, motionless.

23. At 5:10 pm Deputy Richman checked on Mr. Billmeyer. Deputy Richman claimed he didn't like the position Mr. Billmeyer was sitting and wanted to move him.

24. Deputy Richman, during this check, found Mr. Billmeyer to be pale white and unresponsive.

25. Deputy Richman called for staff assistance, at which point Deputy McElmeel, an EMT, and Deputy Pothoff responded.

26. There is no record that Mr. Billmeyer was ever medically assessed by anyone until after he was found unresponsive, and that assessment was done by Deputy McElmeel to assess a pulse and to make attempts to resuscitate Mr. Billmeyer.

27. There is no record that Defendants assessed him or even taken or charted his vitals. There is no record that Mr. Billmeyer was regularly observed or his condition monitored by any other employees or officers of the Jail.

28. On information and belief, Defendants Ramirez, Warner, and Goerdt, violated numerous written policies of the DPD intended to protect someone in Mr. Billmeyer's condition, including but not limited to policies of communications between arresting officers and custodial officers, policies prohibiting the admission of persons who are severely impaired and/or may have taken an

overdose of drugs, policies concerning medical emergencies such as drug overdose and/or unconsciousness, and policies concerning observation and monitoring of intoxicated arrestees.

29. On information and belief, Defendants Richman, Kaufman, Pothoff, Hoffman, and McElmeel violated numerous written policies of the DCS and/or the Jail intended to protect someone in Mr. Billmeyer's condition, including but not limited to policies prohibiting the admission of persons who are severely impaired and/or may have taken an overdose of drugs, policies concerning medical emergencies such as drug overdose and/or unconsciousness, and policies concerning observation and monitoring of intoxicated arrestees.

## VI. CAUSES OF ACTION

### Count I – DELIBERATE INDIFFERENCE

30. Plaintiff reasserts paragraphs 1-29 as if pled in their entirety herein.

31. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Mr. Billmeyer's life as well as his rights and the risk of harm to his occasioned by such conduct.

32. Plaintiff believes and, after reasonable discovery, will show that Mr. Billmeyer's treatment by Defendants was the result of customs and practices of Defendants that were contrary to or expressly violated written policies of the DPD, DCS and/or the Jail, and that such customs and practices were the "moving force" behind Mr. Billmeyer's death. Such practices constitute an arbitrary use of

government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Mr. Billmeyer, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

33. As a result of the foregoing, Mr. Billmeyer, through Defendants' deliberate indifference and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment, deprived of his life, and denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## Count II – *MONELL* CLAIMS

34. Plaintiff reasserts paragraphs 1-29 as if pled in their entirety herein.

35. Defendants, jointly and severally, individually and collectively, failed to adequately and properly train, supervise, manage, and control its employees and Administrator in the assistance, diagnosis, and treatment for persons taken in to custody under the influence of a controlled substance, and as a result ALEX BILLMEYER suffered an adverse action when his freedom of movement was restricted by the Defendants.

36. Defendant SHERIFF JOE KENNEDY was the chief executive decision maker of DUBUQUE COUNTY JAIL.

37. Defendant Sheriff Joe Kennedy was the chief executive officer for the Dubuque County Jail with final authority over matters involving the diagnosis, care, treatment, policy regarding individuals upon their intake and introduction into the Dubuque County Jail and the decisions he makes represent government policy of the County of Dubuque unless specifically modified or abrogated by the Board of Supervisors.

38. Defendants, jointly and severally, individually and collectively, knew, or should have known, that their employees would be required to confront intoxicated persons or persons who were otherwise suffering a medical emergency and that a failure to deal with such persons promptly, properly and with proper regard and respect for the due process and equal protection rights of the persons would cause injury and damage to the person.

39. Defendants, jointly and severally, individually and collectively, knew, or should have known, that there was a system or procedure in place for identifying, diagnosing, treating, and then providing adequate care and treatment to intoxicated or injured persons that came into the jail as a result of the decisions made by its employees.

### Count III - NEGLIGENCE

40. By virtue of the foregoing, Defendants were negligent and grossly negligent, and the medical professionals responsible for Mr. Billmeyer failed to satisfy the applicable standard of care.

## Count IV – WRONGFUL DEATH

41. Mr. Billmeyer suffered a wrongful death for which his estate is entitled to recover damages.

## VII. DAMAGES

42. Mr. Billmeyer's death was preventable, and his estate is entitled to recover for his pain and suffering, for the loss of his life and the enjoyment of life, and for his lost future income as a consequence. In addition, Defendants' violations of Mr. Billmeyer's constitutional and common law rights were so cruel and malicious, and evinced such a total and reckless disregard for his life and those rights, that Mr. Billmeyer's estate is entitled to recover punitive damages from Defendants in order to deter such conduct in the future.

## VIII. JURY DEMAND

43. Plaintiff does hereby request a jury demand for this complaint.

**WHEREFORE**, Plaintiff requests a trial by jury, and further requests that Mr. Billmeyer's estate be awarded actual and punitive damages, pre- and post-judgment interest, costs, attorneys' fees and all other relief to which it is entitled under law or in equity.

Respectfully submitted,

MUNDY LAW OFFICE, P.C.

*s/ Nathan A. Mundy*

_____

NATHAN A. MUNDY (AT0009065)
317 6th Ave., Suite 1300
Des Moines IA 50309-1770
Telephone: 515-288-1552
E-mail: [nathan@mundylawdsm.com](mailto:nathan@mundylawdsm.com)
ATTORNEY FOR PLAINTIFF

Copy to:

David Schrock
Smith Mills Schrock Blades, PC
118 3rd Ave., Suite 200
PO Box 36
Cedar Rapids, IA 52406
ATTORNEY FOR DEFENDANT City of Dubuque

Les Reddick
Kane, Norby, & Reddick, PC
2100 Asbury Road, Suite 2
Dubuque, IA 52001
ATTORNEY FOR DEFENDANTS Dubuque County

PROOF OF SERVICE
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein using the CM/ECF Filing system and at the E-Mail address used to communicate with the parties throughout the entirety of this case. *s/ Nathan A. Mundy   .*